COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-345-CV

 

 

IN THE
INTEREST OF H.H., AND

AND H.H., CHILDREN



                                                                                                        

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction

In three issues, Appellant Hollie H. argues that
the evidence is legally and factually insufficient to support the termination
of her parental rights to H.H. (Jane) and H.H. (Mary).[2]  We will affirm.

 








II. Background
Facts

In September 2006, Child Protective Services
(CPS) began working with Hollie to reunify her with Jane, the older child, who
was living with Hollie=s cousin.  A CPS safety plan was in place that required
Hollie to leave Jane in the care of her cousin until she engaged in recommended
services.  The CPS caseworker, Tonyette
Stafford, testified that Hollie told her that the safety plan was put into
effect because at that time, there was no running water in her home on South
Perkins and she had admitted to the previous CPS worker that she was using
cocaine.  Hollie was about eight months
pregnant with Mary, the younger child, at the time, and admitted to Stafford
that she was using cocaine. Stafford asked Hollie take a drug test in
September, but Hollie failed to take the test.








 Stafford
developed a service plan for Hollie that required her to go to parenting classes
and drug treatment, to attend a psychological evaluation, and to improve the
condition of her home.  Stafford
testified that Hollie admitted to using drugs throughout the pregnancy.  Stafford also testified that, although she
encouraged Hollie to enter drug treatment and discussed the dangers of drug use
during pregnancy with her, Hollie never entered treatment.  Mary was born in October 2006 and tested
positive for cocaine at the time of birth. 
Stafford testified that when Mary was born, Hollie=s home
was not safe for small children. 

Shortly after Mary was born, CPS removed Jane,
who had been in voluntary placement with another family member, and took her
into CPS care along with Mary.  Prior to
removal, CPS checked with the family member who was caring for Jane to see if
placing Mary with her was an option;  the
family member stated that she was unable to care for a second child.  Stafford testified that, after the removal,
she informed Hollie that she could still get her children back by completing
the service plan and showing that she could be a good mother, which Hollie
stated she wanted to do.  However, Hollie
did not complete any of the services on her service plan.








By the time of trial, in August and September
2007, Hollie was pregnant again.  She
testified that she had begun using marijuana at age thirteen and that she was
kicked out of school in the ninth grade. 
She stated that her plan if she got her children back was to move in
with the father of her third child, who had a history of assault.[3]  Hollie testified that she gave birth to Jane
when she was sixteen and that all she knew about Jane=s father
was that he was a twenty-seven-year-old illegal alien who went by the nickname ATaco.@  She had known him for only a week before
moving in with him.

On the last day of trial, the children=s
attorney ad litem asked Hollie if it was in the best interest of her children
for them to be placed back with her. Hollie replied, ANot at
the moment, but I want them back.@  Hollie testified that she had a cousin who
wanted to adopt her kids, but that she would not be willing to voluntarily
terminate her rights so that her children could be adopted. 

The State sought termination of Hollie=s
parental rights on endangerment grounds. 
See TEX. FAM. CODE ANN. '
161.001(1) (D), (E) (Vernon Supp. 2007). After a bench trial, the trial court
found that Hollie (1) knowingly placed or knowingly allowed Jane and Mary to
remain in conditions or surroundings which endangered their physical and
emotional well‑being and (2) engaged in conduct or knowingly placed them
with persons who engaged in conduct which endangered their physical or
emotional well‑being.  It
additionally found that it was in the best interest of Jane and Mary that
Hollie=s
parental rights be terminated and that the State should receive custody and
managing conservatorship of the children. 
This appeal followed.








III. Legal
and Factual Sufficiency

Hollie contends that the evidence is legally and
factually insufficient to support the trial court=s best
interest and family code section 161.001(1)(D) and (E) findings.[4]

A.     Standards of Review








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@ Santosky
v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). AWhile
parental rights are of constitutional magnitude, they are not absolute. Just as
it is imperative for courts to recognize the constitutional underpinnings of
the parent‑child relationship, it is also essential that emotional and
physical interests of the child not be sacrificed merely to preserve that
right.@ In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 
In a termination case, the State seeks not just to limit parental rights
but to end them permanentlyBto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit. TEX. FAM. CODE ANN. ' 161.206(b) (Vernon 2007); Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
We strictly scrutinize termination proceedings and strictly construe
involuntary termination statutes in favor of the parent. Holick, 685
S.W.2d at 20B21; In re E.M.N., 221
S.W.3d 815, 820 (Tex. App.CFort
Worth 2007, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish at least one ground listed under subdivision (1) of the statute
and must also prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination
may not be based solely on the best interest of the child as determined by the
trier of fact. Tex. Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).








Termination of parental rights is a drastic
remedy and is of such weight and gravity that due process requires the
petitioner to justify termination by clear and convincing evidence.  TEX. FAM. CODE ANN. '' 161.001,
161.206(a); In re J.F.C., 96 S.W.3d 256, 263B64 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings. In re G.M., 596
S.W.2d 846, 847 (Tex. 1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort
Worth 2006, pet. denied).  It is defined
as the Ameasure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@ TEX. FAM. CODE ANN. ' 101.007
(Vernon  2002).

In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a fact-finder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment. Id.  This
means that we must assume that the fact‑finder resolved any disputed
facts in favor of its finding if a reasonable fact-finder could have done so. Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could and disregard contrary evidence unless a
reasonable fact-finder could not. Id.








We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the fact-finder=s province.  Id. at 573, 574. And even when
credibility issues appear in the appellate record, we must defer to the
fact-finder=s determinations as long as they
are not unreasonable.  Id. at 573.

In reviewing the evidence for factual
sufficiency, we must give due deference to the fact-finder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a fact-finder could reasonably form a firm conviction or
belief that the termination of the parent=s
parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28.  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.  If we reverse on
factual sufficiency grounds, then we must detail in our opinion why we have
concluded that a reasonable fact-finder could not have credited disputed
evidence in favor of its finding.  J.F.C.,
96 S.W.3d at 266B67.








B.     Analysis

1.     Endangerment

The term Aendanger@ means
to expose to loss or injury, to jeopardize. 
Boyd, 727 S.W.2d at 533. Although both subsections (D) and (E)
involve endangerment, under subsection (D), the environment of a child must be
examined to determine if that is a source of endangerment to the child.  Tex.
Fam. Code Ann. ' 161.001(1)(D); In re
D.T., 34 S.W.3d 625, 632 (Tex App.CFort
Worth 2000, pet. denied).  When analyzing
the trial court=s findings under subsection (E),
we must determine whether sufficient evidence exists that the endangerment of
the child=s physical well‑being was
the direct result of the parent=s
conduct, including acts, omissions, or failures to act.  In re D.M., 58 S.W.3d 801, 811B12 (Tex.
App.CFort
Worth 2001, no pet.).  Termination under
section 161.001(1)(E) must be based on more than a single act or omission; a
voluntary, deliberate, and conscious course of conduct by the parent is
required.  D.T., 34 S.W.3d at 634;
In re K.M.M., 993 S.W.2d 225, 228 (Tex. App.CEastland
1999, no pet.).  However, it is not
necessary that the parent=s conduct be directed at the
child or that the child actually suffer injury. 
Boyd, 727 S.W.2d at 533. The specific danger to the child=s
well-being may be inferred from parental misconduct standing alone.  Id.








To determine whether termination is necessary,
courts may look to parental conduct both before and after the child=s
birth.  D.M., 58 S.W.3d at
812.  As a general rule, conduct that
subjects a child to a life of uncertainty and instability endangers the
physical and emotional well-being of a child.  In re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan
Antonio 1998, pet. denied).








A pattern of continued drug use, including drug
use during the pregnancy of another child and a parent=s
failure to remain drug-free while under the State=s
supervision, will support a finding of endangering conduct under section
161.001(1)(D) even if there is no direct evidence that the parent=s drug
use actually injured the child. Vasquez v. Tex. Dep=t of
Prot. & Regulatory Servs., 190 S.W.3d 189, 196 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied) (holding evidence legally and factually
sufficient to support endangering-conduct finding when older sibling of subject
child tested positive for drugs at birth and parent continued to use drugs
after subject child=s birth and during pendency of
Department=s involvement). A fact-finder
may reasonably infer from a parent=s
failure to attend scheduled drug screenings that the parent was avoiding
testing because the parent was using drugs. 
In re W.E.C., 110 S.W.3d 231, 239 (Tex. App.CFort
Worth 2003, no pet.); see also In re T.N., 180 S.W.3d 376, 383 (Tex.
App.CAmarillo
2005, no pet)(reasoning that a parent=s
engaging in illegal drug activity after agreeing not to do so in a service plan
for reunification with her children is sufficient to establish clear and
convincing proof of voluntary, deliberate, and conscious conduct that
endangered the well-being of her children).

Here, the record shows that Hollie used illegal
drugs throughout CPS=s involvement in her life.  Hollie continued to use illegal drugs even
after CPS informed her of its concerns and that she could be harming her unborn
baby. When Mary was born cocaine positive, CPS removed her and Jane from Hollie=s
care.  CPS created a service plan for Hollie
that included drug treatment, but Hollie failed to enter drug treatment or
complete any of the other services that CPS recommended.  Hollie has also found it difficult to remain
employed.

The State presented substantial testimony during
the trial to support its contention that the South Perkins home, where Hollie
and Jane had been living, was not a safe environment for a young child.  Hollie and Jane were living in the South
Perkins home when CPS initiated the investigation.  A CPS worker testified that there was old
food and clothing strewn throughout the home, an open pornographic magazine
lying in plain view on the kitchen floor, and minimal food in the home.  He described the kitchen as being covered in
a greasy residue and stated that the stove had accidently been left on over
night.  He also noted that the bathroom
was very dirty and did not have a functioning toilet or sink and that there was
no hot water in the residence.








Hollie testified at trial that her plan if the
children were returned to her was to move back in with Earlieve Hampton, and
she offered no alternative plan when confronted with the information that
Hampton was in jail and might be a danger to her children.  Hollie presented evidence that the South
Perkins home had been cleaned up and that she had completed all but one day of
a drug rehabilitation program.  And she
pointed out that Jane was not living with her in the South Perkins home at the
time of the removal because she had already voluntarily placed Jane with a relative.

The State=s
evidence supporting termination of Hollie=s
parental rights includes Hollie=s
multiple admissions of drug use during the case; her failure to complete
several requested drug tests; her multiple positive drug tests, which included
marijuana, cocaine, and methamphetamine; her lack of stable, suitable housing
for her children; her lack of effort in attending and completing CPS services;
the CASA volunteer=s recommendation that Hollie=s
parental rights be terminated; and Mary testing positive for cocaine at birth.








Hollie had many explanations for her inability to
complete the CPS  service plan.  Hollie stated that she was delayed from
entering drug treatment because initially she thought she had to pay for it and
did not have the money. When she figured out that she did not have to pay, she
discovered that her I.D. card had been stolen and she could not enter until she
obtained a new one. When a Abed@ again
became available, Hollie stated that the notice was too short and she did not
have the proper clothing necessary to attend. 
Hollie did not engage in an aftercare program because it did not start
until after her trial began and she felt the programs were either too early or
too late in the day.

Viewing all the evidence in the light most
favorable to the trial court=s
judgment, we conclude that the trial court could have reasonably found that
Hollie endangered her children.  The
evidence established that Hollie allowed Jane to remain in conditions and
surroundings that endangered her physical and emotional well-being and that her
continuous drug use constituted conduct that endangered both Jane=s and
Mary=s
physical and emotional well-being.  See
J.P.B., 180 S.W.3d at 573.

Giving due deference to the trial court as the
fact-finder, we also conclude that the evidence was factually sufficient.  Based on the entire record, the trial court
could have reasonably concluded that Hollie=s drug
use and failure to provide a safe environment for her children endangered
them.  See TEX. FAM. CODE ANN. '
161.001(1)(D), (E).  We overrule Hollie=s first
two issues.

2.     Best
Interest








Prompt and permanent placement
of the child in a safe environment is presumed to be in the child=s best
interest.  Id. ' 263.307(a).  There is also a strong presumption that
keeping a child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)    the desires of the child; 

(2)    the emotional and physical needs of the
child now and in the future;

(3)    the emotional and physical danger to the child
now and in the future;

(4)    the parental abilities of the individuals
seeking custody; 

(5)    the programs available to assist these
individuals to promote the best interest of the child;

(6)    the plans for the child by these individuals
or by the agency seeking custody;

(7)    the
stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which
may indicate that the existing parent‑child relationship is not a proper
one; and

(9)    any excuse for the acts or omissions of the
parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).








These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate. C.H., 89 S.W.3d at 27. Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child. Id.
On the other hand, the presence of scant evidence relevant to each factor will
not support such a finding.  Id.

a.      Desires of the Children

At the time of trial, Jane was three years old,
and Mary was eleven months old.  Hollie
testified that Jane told her that she wanted to go home with her and did not
want to go with CPS at the end of her visits. 
She stated that, during the visits, she held Mary and that Jane
interacted with her and brought toys and puzzles over to her.  A CPS worker who monitored the visits agreed
that Jane was always happy to see Hollie at the visits, but she was concerned
that Jane was not as bonded with Hollie as she should be.  Hollie=s
counsel pointed out that Jane had spent a majority of her life in someone else=s care
and that Hollie never had custody of Mary. 
The children=s court appointed advocate
testified that the children were bonded with their foster family and called
their foster parent Amom.@

b.     Emotional and Physical Needs and Danger

 








The State presented evidence
that Hollie had a long history of illegal drug use, and despite multiple
opportunities before and during trial, she did not complete a drug treatment
program, engage in aftercare programs, or show a desire to maintain a drug-free
lifestyle.  Hollie=s plan
to meet the children=s needs in the future was to
move in with Hampton, and she did not offer an alternative plan when questioned
about Hampton=s illegal drug use and history
of crime and violence. 

c.      Parental
Abilities

 

Hollie
was referred to parenting classes during the initial investigation and as part
of her service plan.  The State presented
evidence that, during the course of CPS=s involvement in Hollie=s life, she had not shown
the ability to find employment, maintain stable housing, complete parenting
classes, or establish any pattern that would indicate that she was able to
become or remain drug free.

 

d.     Plans
for the Children

 

The State presented adoption as its plan for the
children.  A CPS representative testified
that there was very little chance that the children would not be adopted.  She stated that the current foster family was
considering adoption and that there were three other families interested in
adopting Jane and Mary if the current family did not adopt them.  Hollie testified during the trial that she
did not think it was in her children=s best
interest that they be returned to her at that time.








e.      Stability
of the Home

Prior to removal by CPS, Jane
had lived at three different residences and 
with three different people since turning six months old.  A CPS worker testified that, in her opinion,
Hollie was not capable of living independently and that Hollie failed to
participate in services that would have helped her gain those skills.

Another CPS worker testified that, during the
year that the children were in CPS=s care,
the children were moved twice, to two different foster homes. However, CPS
placed the children in a foster home that was approved for adoption, and its
plan was to have both children adopted by the same family so that the children
would not need to be moved again.  

f.      Acts or Omissions

 

Hollie regularly visited her children after their
removal, but after the trial started, she missed a visit and did not call
CPS.  Her excuse was that she was too
sick to call and slept through the visit. 
Additionally, a CPS worker testified that on one occasion, she believed
that Hollie came to the visit with her children while she was under the
influence of drugs and that Hollie refused to take a drug test when confronted.








Hollie testified that she did not complete
various services because she did not have identification, she hated herself,
she did not think she would get Jane back, and she lacked transportation.  However, a CPS worker testified that she had
arranged for transportation to all of the services that Hollie was asked to
complete.

Viewing all the evidence in the light most
favorable to the judgment, we hold that the evidence was legally sufficient to
support the trial court=s finding that termination of
Hollie=s
parental rights was in the children=s best
interest.  See TEX. FAM. CODE ANN. '
161.001(2).  Viewing the same evidence in
a neutral light, we hold that it was also factually sufficient to support the
trial court=s findings that termination of
Hollie=s
parental rights was in the children=s best
interest. See id.  We overrule
Hollie=s third
issue.

IV.  Conclusion

Having overruled all of Hollie=s
issues, we affirm the trial court=s
judgment terminating Hollie=s
parental rights to Jane and Mary.

 

PER
CURIAM

 

PANEL F:  HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

 

DELIVERED:  July 24, 2008 












[1]See Tex. R. App. P. 47.4.





[2]We use fictitious names
in accordance with section 109.002(d) of the family code.  TEX. FAM. CODE ANN. ' 109.002(d) (Vernon 2002).





[3]Earlieve Hampton, the
alleged father of Hollie=s third child, was in
jail during Hollie=s trial, awaiting his own
trial on an indictment for assault.  His
charge was enhanced as a habitual offender due to seven previous assault
convictions and a burglary of a habitation conviction.  Hollie testified that he would not hurt her
children because he loves them, that she had known Hampton for less than two
years at the time of trial, and that she had been living with him on and off
since the day they met.





[4]The State argues that
Hollie=s legal and factual
sufficiency challenges are not properly before this court because her combined
motion for new trial and statement of points did not comply with the
requirements of section 263.405(i) of the family code.  See TEX. FAM. CODE ANN. ' 263.405(i) (Vernon Supp. 2007).  Having previously held that section 263.405(i)
violates the Texas constitution, we will review Hollie=s issues.  See In re D.W., 249 S.W.3d 625, 629
(Tex. App.CFort Worth, 2008, pet.
filed) (holding that section 263.405(i) is void as a violation of the
separation of powers provision of the Texas constitution).